IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| STEVEN KIEWIET,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:16-cv-04039-SLD-JEH |

**Report and Recommendation**

Now before the Court are the Plaintiff, Steven Kiewiet's, Motion for Summary Judgment (D. 9)[1] and the Commissioner's Motion for Summary Affirmance (D. 13). Both parties have submitted supporting memoranda thereto. (D. 10; 14). This matter has been referred to the Court for a Report and Recommendation. For the reasons stated herein, the Court recommends that the Plaintiff's Motion for Summary Judgment be DENIED, and the Defendant's Motion for Summary Affirmance be GRANTED.

**I**

In January 2013, Kiewiet filed an application for Disability Insurance Benefits (DIB) alleging disability beginning on May 1, 2012. His claim was denied initially and upon reconsideration. Kiewiet requested a hearing before an Administrative Law Judge (ALJ) and appeared before ALJ Diane Raese Flebe in March 2014 via video. He was not represented by counsel. ALJ Flebe later found that Kiewiet retained the residual functional capacity (RFC) to perform a range of

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

light work as defined by agency regulations, concluding that he was not disabled. (D. 6 at pp. 31-38). The Appeals Council denied Kiewiet's request for review in September 2015, making ALJ Flebbe's Decision the final decision of the Commissioner. 20 C.F.R. § 404.981. Kiewiet filed the instant civil action, now represented by counsel, seeking review of ALJ Fleebe's Decision pursuant to 42 U.S.C. § 405(g) in February 2016. (D. 1).

II

At the time Kiewiet applied for DIB, he was 58 years old. He was living in a home, in Eldridge, Iowa with his wife. Kiewiet earned an associate's degree after graduating from high school and most recently worked as an insurance salesman for over a decade. Kiewiet has not worked since May 1, 2012, however, when he alleges his disability began. On the various SSA forms he submitted, Kiewiet indicated that he has the following conditions: acute tinnitus, arthritis, anxiety, neck pain, light sensitivity, sleep deprivation, and noise sensitivity.

At the hearing before ALJ Flebbe, Kiewiet testified that the most severe problem he has is "extreme" acute tinnitus in his left ear. (D. 6 at pg. 55). He said it started approximately 14 months earlier but increased significantly starting in late April 2012. By May of that year, Kiewiet reports that his symptoms were "out of control[.]" *Id.* at pg. 57. He described the main symptom as a high ringing sound, solely in his left ear, and said he has not been able to discern any triggers for it. Kiewiet also said the sound never goes away, but fluctuates slightly on occasion giving him minor relief. He testified that it wakes him up most mornings at roughly 3:00 AM. Kiewiet has tried physical therapy to address the tinnitus, but estimated it only gave him a five percent reduction in his symptoms, at most. *Id.* at pg. 57.

Kiewiet explained that the constant nature of his tinnitus causes him anxiety, which is "frustration-related[.]" *Id.* at pg. 56. He takes Cymbalta and

Valium to cope with his anxiety symptoms, which include sleep deprivation, fatigue, and concerns about his finances. Kiewiet also testified that he recently had a doctor perform a surgical procedure on his neck, replacing two bulging discs. His neck problems stem from a bad accident he had in 1982. His symptoms became worse and significantly increased after he had a radiofrequency neuro ablation procedure done on the left side of his body. *Id.* at pp. 61-62. While the surgery on his neck was recent at the time of the hearing, Kiewiet considered the operation a success and reported no lingering complications. As for his arthritis, Kiewiet stated that he has some in his lower back, but it does not affect his ability to sit. It does, however, limit him to standing for no more that 15-20 minutes at a time. Overall, Kiewiet said that he is physically healthy, other than the tinnitus in his left ear and his neck issues. *Id.* at pp. 64-65.

Kiewiet said he rarely drives. His wife usually drives him where he needs to go and does all of their household chores, minus some of the cooking—his lone hobby. Kiewiet does use a lawn mower occasionally and a snow blower when needed, and he is capable of attending to his personal hygiene. He said his wife does the household chores because he is responsible for other things, not because he is incapable. Kiewiet also said he rarely looks at electronic screens, such as computer monitors and cell phone displays. He says that doing so exacerbates his tinnitus. *Id.* at pg. 70.

Vocational Expert, Alfred Walker, also testified at Kiewiet's hearing. Based on Kiewiet's testimony, Walker concluded that Kiewiet had a past relevant work history of three and a half years as a farm and garden supply representative and approximately 14 years as an insurance agent. The ALJ asked Walker if someone with Kiewiet's medical conditions could perform light and medium work that assumed occasional climbing ramps, stairs, and ladders; occasional balancing, stooping, kneeling, crouching, crawling; no climbing ropes, or scaffolding; and

3

avoiding concentrated exposure to noise and a variety of other hazards. Walker said that under such restrictions, that person would be able to perform all of Kiewiet's past work.

Walker said that if an employee were to miss two days or more of work every month, they would likely lose their employment on the basis of inadequate productivity. Additionally, he said the result would be the same if they were able to make it to work every day but were off task approximately fifteen percent of the time. Walker stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles (DOT) and that the portions of his testimony not specifically addressed by the DOT were based on his professional experience.

In closing, Kiewiet stated that "Walker's assessment is probably very accurate." *Id.* pg. 82. He further stated that his biggest problem was his photophobia—his first mention of the impairment—and "the inability to look at anything artificial." *Id.* Upon further questioning by the ALJ, Kiewiet stated that his photophobia started about a year before the hearing. The ALJ remarked that she did not see much about Kiewiet's photophobia in the record. The ALJ concluded the hearing after explaining to Kiewiet that she would wait 10 days, giving him time to submit additional medical records if needed, before reviewing his file to issue her Decision.

### III

In her Decision, the ALJ determined that Kiewiet had the severe impairments of "Tinnitus and Cervical Spine Protrusion status/post Fusion (20 CFR 404.1520(c))." (D. 6 at pg. 28). She further determined, however, that Kiewiet "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 30.

4

The ALJ analyzed Kiewiet's medical records chronologically. *Id.* at pp. 31-36. She noted that Kiewiet did not demonstrate that his neck problems met the requisite physical findings and that he was able to ambulate effectively. In analyzing his tinnitus, the ALJ found that he suffers from it and that tinnitus is best evaluated under Listing 2.07, disturbance of labyrinthine-vestibular function. The ALJ noted that Kiewiet claims he is unable to perform any tasks requiring work on a computer. *Id.* at pg. 31. She did not, however, explicitly address whether Kiewiet had photophobia.

Regarding Kiewiet's neck pain, the ALJ found that "the opinion that the claimant successfully completed physical therapy and is capable of full time work to be in line with the objective medical record, the claimant's response to treatment and his actual activities." *Id.* at pg. 32. She went on to detail Kiewiet's visit to the Mayo Clinic to get a second opinion about his tinnitus. There, doctors found that Kiewiet had normal hearing and ruled out any vascular cause for his tinnitus. *Id.* at pg. 33. The ALJ concluded that the Mayo Clinic specialists' opinions were given great weight. *Id.* She further noted that some of Kiewiet's providers advised him that he needed to find a way to cope with his tinnitus and return to work.

The ALJ ultimately concluded that:

> The claimant's suggestion that he is unable to sustain any sustained work activities [due to tinnitus] is not supported by the record. Inconsistencies in the record regarding the claimant's symptoms contribute to the conclusion that the claimant's allegations about the nature and severity of his symptoms are not entirely reliable. While the claimant establishes the nexus required under regulations, specifically that the claimant's impairments could reasonably be expected to produce some of the symptoms alleged, support for the claimant's allegations as to the frequency, intensity and persistence of these symptoms is lacking in the record.

*Id.* at pg. 36.  The ALJ also stated that she "does not fully accept the claimant's allegations due to inconsistencies regarding the claimant's resultant limitations and his actual functioning."  *Id.*

## IV

Kiewiet makes multiple arguments in his Motion for Summary Judgment. Most prominently, he argues that the ALJ erred in: (1) finding that he can do his past work without substantial supporting evidence and (2) finding that he can do light work without substantial supporting evidence.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process.  First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any

substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform their past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. "A negative answer at any point, other than at step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled." *Garfield v. Schweiker*, 732 F.2d 605, 607 fn. 2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. In the instant case, Kiewiet claims the ALJ erred at steps 2, 4, and 5.

**A**

First, Kiewiet argues that the ALJ's finding that he can do his past work is not supported by substantial evidence. (D. 10 at pp. 15-36). Within this argument he makes several sub-arguments, including: (1) the ALJ did not sufficiently address his claim that he had photophobia, improperly finding him uncredible in

7

the process (*Id.* at pp. 15-22); (2) the ALJ did not sufficiently accommodate his photophobia and the fact that he testified he was unable to use a computer (*Id.* at pp. 14-16); (3) the ALJ erred in evaluating the record regarding his tinnitus and the treatment he had for it (*Id.* at pp. 21-29, 32); and (4) the ALJ erred in relying on opinions from two of his own medical providers stating that he needed to find a way to cope with his tinnitus and return to work in spite of his condition. *Id.* at pp. 29-31.

1

By his own admission, at the time he testified before the ALJ, Kiewiet's only physical problems were the tinnitus in his left ear and problems associated with his neck. (D. 6 at pp. 64-65). His apparent struggles with photophobia, in his words, "exasperate[d] the left ear tinnitus and popping." *Id.* at pg. 70. As such, the ALJ's assessment of Kiewiet's tinnitus is, by extension, an assessment of his photophobia. Regardless, his claim on summary judgment that photophobia was a standalone condition that the ALJ should have addressed is not supported by the record.

There is no diagnosis of photophobia in Kiewiet's medical records. The only mention of a "diagnosis" of the condition is in a summary of his records prepared by his legal counsel. *Id.* at pg. 233. In December 2013, Kiewiet reported to his eye doctor that he had been photophobic over the past year. (D. 6-1 at pg. 122). By February 2014, that doctor reported to the Office of Disability Adjudication and Review that there were "no findings present that should explain [Kiewiet's] new extreme photophobia." *Id.* The remainder of the references to photophobia in Kiewiet's medical records are from his self-reported experience of symptoms or medical staff stating that his photophobia was unrelated to his neck troubles. *Id.* at pp. 56, 136-37, 150, 160, 164, 166, 167, 170.

In light of the record before the Court, Kiewiet's assertion that the ALJ did not sufficiently address his claim that he had photophobia is misleading. The ALJ did not address his photophobia because it was not necessary for her to do so. Kiewiet stated that he had photophobia, however, this assertion is not a diagnosis and there is no medical evidence in the record supporting his subjective claims of symptoms. Finding no medical documentation to support Kiewiet's claim, the ALJ had no choice but to assess the credibility of his statements on the matter.

An ALJ's credibility determinations will not be overturned unless the findings are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."[2] An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Just as the Court cannot re-weigh the medical evidence of record and resolve conflicts in the record, nor can the Court make its own credibility finding. "When assessing an ALJ's credibility determination, [the court does] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examines whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). It is only when an

---

[2] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016. The operative language the Court quotes here from SSR 96-7p, however, appears in SSR 16-3p verbatim. By either standard, the Court's analysis remains the same.

ALJ's determination lacks any explanation or support that it is "patently wrong." *Id*. at 413-14.

The ALJ's credibility finding in this case was not erroneous. In assessing Kiewiet's tinnitus—and by extension, his photophobia—she provided reasons why she found his testimony not fully credible. (D. 6 at pg. 36). There is no indication the ALJ failed to review the entire case record. She cited specific, objective medical evidence which counters Kiewiet's claims of experiencing symptoms. *Id.* Thus, the ALJ included specific reasons for her credibility finding, supported by evidence from the case record. The ALJ had no objective medical evidence confirming Kiewiet's claims of disability from photophobia or tinnitus. In reaching her conclusion, the ALJ provided enough clarity and detail to permit meaningful review of her rationale. The ALJ considered the contrary evidence—Kiewiet's unsubstantiated claims—and explained why she rejected them. She relied primarily upon the absence of medical evidence in the record confirming his symptoms and his self-reported ability to function, generally speaking. As such, the ALJ did not commit error in her assessment of Kiewiet's conditions or her credibility analysis that would require remand.

### 2

The ALJ also determined that Kiewiet's tinnitus should be assessed under Listing 2.07. That listing "requires a history of frequent attacks of balance disturbance, tinnitus and progressive hearing loss and with both disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests and hearing loss established by audiometry." (D. 6 at pg. 30) (accurately summarizing Listing 2.07). In order to show that he met a particular listing, Kiewiet must establish all of the criteria set forth in the Listing. 20 C.F.R. § 404.1525(c)(3). If a single criterion is lacking, Kiewiet does not meet the Listing. *Id. Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Furthermore, a diagnosis of a precise

impairment alone—assuming there was one—is insufficient. 20 C.F.R. § 404.1525(d). A claimant's own description of their symptoms is insufficient to show that they satisfied the Listing. See 20 C.F.R. §§ 404.1529(d)(3); 416.929(d)(3) (explaining that claimant's allegations of symptoms will not be substituted "for a missing or deficient sign or laboratory finding to raise the severity of impairment(s) to that of a listed impairment").

Kiewiet has not put forth sufficient evidence to support his claim that his photophobia and tinnitus is disabling. The requirements of Listing 2.07 simply are not present or even alleged to be present. He points to nothing in the record, aside from his own complaints, to establish that the ALJ should have found his conditions were debilitating. Kiewiet explicitly acknowledges "[i]t is also true that there has been no objective verification in the medical record of the severity of either of these impairments." (D. 10 at pg. 29). The record also establishes that two of Kiewiet's own physicians recommended he find a way to cope with his tinnitus and get back to work. Kiewiet's argument that the ALJ erred in assigning significant weight to these opinions is unavailing. Thus, the Court finds that the ALJ did not err in her rulings on these issues.

## B

Next, Kiewiet argues the ALJ's finding that he can do light work is unsupported by substantial evidence. Specifically, he asserts that the ALJ erred in (1) failing to consider that his spasmotic torticollis was severe and (2) concluding that he could perform light work when the state agency doctors concluded that he could perform medium work. (D. 10 at pp. 36-43). Kiewiet argues his diagnosis of spasmodic torticollis, a condition impacting his neck, is distinct from the "cervical impairment" the ALJ did address. *Id.* at pp. 39-40. He claims that the ALJ's failure to address the former condition separately lead to an erroneous finding that is not based on substantial supporting evidence. *Id.*

Kiewiet was diagnosed with spasmodic torticollis. See (D. 6-1 at pp. 57, 58, 60, 62, 65, 71, 73, 75, 77). These medical records, however, predate Kiewiet's neck surgery and hearing before the ALJ. After the operation, he testified that his neck problems had decreased substantially. As such, the ALJ did not need to address a condition for which the claimant no longer complained he had symptoms. She addressed any problems associated with Kiewiet's neck by noting that he did not satisfy the requisite physical findings to be deemed impaired and was able to ambulate effectively. (D. 6 at pg. 30). Accordingly, Kiewiet's argument on this point fails on the merits.

Kiewiet also claims that the ALJ had no medical opinion to rely upon in assessing his RFC for light work. *Id.* at pg. 40. By his estimation, because the ALJ relied upon expert testimony establishing that he could perform medium work, her subsequent finding that he could perform light work was not based on a medical opinion. Kiewiet merely concludes "[i]t is clear" the ALJ did not rely on the original opinion finding he could perform medium work when she concluded that he could perform light work. *Id.* The Court finds this argument insufficient. What is clear is that an expert established that Kiewiet could perform work at a level *greater* than the ALJ's formulated RFC. The Court rejects Kiewiet's unsupported argument and finds that the ALJ's ruling on the matter was not erroneous.

V

For the reasons stated herein, the Court recommends that Kiewiet's Motion for Summary Judgment (D. 9) be DENIED and the Commissioner's Motion for Summary Affirmance (D. 13) be GRANTED. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a

waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on June 29, 2017.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE